NYE (UNITED STATES v.). See Case No. 15,906.

## Case No. 10,387.

### The NYMPH.

[Blatchf. Pr. Cas. 564.] [1]

District Court, S. D. New York. Oct., 1863.

PRIZE — DEVIATION—CONTRABAND OF WAR—CONDEMNATION.

The vessel having been captured within five miles of the enemy's coast. and about 150 miles off her true course. as designated on her papers, and no excuse being given for the deviation. and her cargo consisting partly of articles contraband of war, and wholly of supplies of urgent importance to the enemy. and no claim being interposed to the vessel and cargo. although the master was brought in and examined as a witness. the court ordered condemnation of vessel and cargo. unless their owner should. on application. obtain leave, prior to the third regular term after such order. to interpose a claim to the merits of the libel. The libellants were allowed meantime to take an order for the sale of the prize property.

In admiralty.

BETTS, District Judge. The above vessel had a certificate of British registry, at Belize, Honduras. dated March 26, 1863, to James McNab. of that place. She is represented to be of foreign build. but the place of her build is not stated in the registry. A shipping agreement was entered into between Alexander McCapping. master. and a ship's crew on

---

[1] [Reported by Samuel Blatchford, Esq.]

the 2d of April, 1863, for a voyage from that place to a port or ports in the Gulf of Mexico, and thence back to Belize, or other port in the West India Islands. A manifest of the cargo to be carried, destined to Matamoras, was found on board the vessel when arrested, and the vessel was cleared from Belize for Matamoras. The manifest included, amongst general merchandise, 90 coils of rope, 6 packages of brandy, 554 gallons of rum, 35 gallons of alcohol, 35 gallons of whiskey, 1 barrel of castor oil, 5 packages of medicines, 1 barrel of alum, &c. Her cargo at the time of her capture consisted of medicines, shoes, coffee, rice, sugar, dry goods, &c. The testimony given by the master of the vessel and a passenger, on their examination in preparatorio, shows that the vessel sailed from Belize about the 2d of April, and was captured on the 22d of April in the morning, 4 miles off Pass Caballos, near Galveston, and about 5 miles from the light-house, because, as the master says, "they thought she had run the blockade." She had no log-book on board when seized. She was about 150 miles off her true course to Matamoras. No proof is furnished in excuse of so wide a deviation, such as that violent weather had been encountered, or some impediment to a direct navigation to Matamoras. McNab, the owner of the vessel, is an English subject, now resident at Matamoras. No bill of sale of the vessel to him accompanies the register, nor any evidence of the payment of any consideration for the purchase. The master resides at Matamoras. The vessel was captured by a United States gunboat. The master knew that Pass Caballos and the coast of Texas were under blockade. The owner of the vessel was an Englishman, who resided with his family at Matamoras.

It is very obvious that the position, equipment, and circumstances of the vessel and her relation to the voyage, are all clothed with violent suspicions and presumptions against the fairness and honesty of the adventure. They abundantly justify her arrest in the attitude in which she was discovered. The suspicions are of such force as to demand at the hands of her owner the clearest explanation, to relieve her from the conclusion that she was purposely hovering on the enemy's coast with the intention of placing her cargo in the possession of the rebels. It consisted in part of articles contraband of war, and wholly of supplies of urgent importance and necessity to all the region held under blockade. Every inference would seem to be of controlling force that the vessel could not, on the facts in evidence, be 150 miles out of her true course on that short transit, and that she had purposely run directly from Belize to Galveston, with the design to deliver her cargo to the rebels. The master was in court. convenient, at the wish of the owner, to claim the vessel and cargo, and vindicate the honesty of the voyage, had any

defence been desired from him. A decree by default has been suffered, and the strong suspicions which justified the capture and that first decree call, also, for the final condemnation and forfeiture of the vessel and cargo, unless an application is made to the court, on proper grounds, on behalf of the real owner, for leave to intervene and give proof in vindication of the lawfulness and integrity of the voyage in question. That opportunity will be accorded him if sought for, when he may be allowed to prove. if such be the fact, the bona fide ownership of the vessel and the honesty of her voyage, and to justify her being found almost in the act of entering a blockaded port, with a cargo most especially fitted for its necessities, at a point almost 200 miles aside from her alleged destination. The final judgment to be entered in the suit will be the one above indicated, unless a claim is permitted as above to be interposed to the merits of the libel previous to the term to be held in January next. In the meantime an order may be taken, at the discretion of the libellants, directing a sale of any portion of the prize not already disposed of.

Decree accordingly.